# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

           Plaintiff-Appellee,

v

TOD KEVIN HOUTHOOFD,

           Defendant-Appellant.

UNPUBLISHED
March 15, 2018

No. 332323
Saginaw Circuit Court
LC No. 05-025865-FH

AFTER REMAND

Before: HOEKSTRA, P.J., and METER and K. F. KELLY, JJ.

METER, J. (*dissenting*).

In my view, the trial court properly assessed 10 points for offense variable (OV) 14 of the sentencing guidelines under the unique circumstances presented here. I respectfully dissent and would affirm defendant's sentence for solicitation of murder.

MCL 777.44(1)(a) provides for a score of 10 points for OV 14 if "[t]he offender was a leader in a multiple offender situation," and MCL 777.44(1)(b) provides for a score of zero points if "[t]he offender was not a leader in a multiple offender situation[.]" In scoring OV 14 at 10 points, the trial court stated:

> [T]his is really clear to me that he is definitely the leader in this situation. We can argue semantics about it being a one-person crime once he solicits, but -- but for the solicitation, there would be no crime committed at all. And Mr. Dotson had nothing to do with the initial solicitation. So it's quite clear to me he's the leader in this situation . . . .

I disagree with the majority's conclusion that the trial court made inadequate factual findings regarding OV 14. The trial court's findings as cited above, during which the court referred to Michael Dotson, made clear by implication that the court was viewing defendant's crime as a "multiple offender situation," involving defendant and Dotson, of which defendant was the

-1-

leader.[1]  While the court's phrasing was inartful and the court did not specifically refer to a "multiple offender situation," there is a presumption that a trial judge knows the applicable law. See, generally, *People v Sherman-Huffman*, 466 Mich 39, 43; 642 NW2d 339 (2002), and *People v Cazal*, 412 Mich 680, 686-687; 316 NW2d 705 (1982).  As such, the court, in ruling on the challenge to the scoring of OV 14, presumably was cognizant of the language and requirements of MCL 777.44.  Moreover, evidence demonstrated that defendant, of his own accord, solicited Dotson to commit murder, and therefore, the court's factual findings in accordance with this evidence were not clearly erroneous.  *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015).

In addition, none of the cases relied on by the majority—*People v Jones*, 299 Mich App 284, 287; 829 NW2d 350 (2013), vacated in part on other grounds 494 Mich 880 (2013), *People v Ackah-Essien*, 311 Mich App 13; 874 NW2d 172 (2015), and *People v Dickinson*, 321 Mich App 21; ___ NW2d ___ (2017)—addressed the situation at issue in the present case, i.e., a situation in which an offender solicits a person to commit murder and the person agrees, and even participates in further planning, but the person does not intend to follow through with the murder.  The majority places great emphasis on the *Jones* panel's reliance on dictionary definitions to construe the phrase "multiple offender situation," concluding that, for OV 14 to be scored at 10 points, the other person or persons involved must have violated the law while part of a group.  See *Jones*, 299 Mich App at 286-288.  The *Jones* panel made this statement, however, in the course of evaluating a fact-specific situation.  *Id*. at 286.  The panel concluded that the situation at issue in *Jones* justified a score of 10 points for OV 14 because, even though no other people besides the defendant had been placed on trial for an assault, another person, identified as "Taiwan," had accompanied the defendant to the mall where the shooting took place and had escalated the confrontation there.  *Id*. at 285, 287-288.  The panel used the dictionary definitions in support of its finding that the defendant and Taiwan had both been offenders in the situation. *Id*. at 287-288.

Due to the unique nature of the crime of solicitation and the factual circumstances at issue, I do not find it appropriate, in scoring OV 14 in the present case, to use *Jones* and similar cases to focus on whether the person solicited violated the law.  Cf. *id*. at 288.  I believe that MCL 777.44(1)(a) should be interpreted, in the present case, from the point of view of defendant.  When defendant solicited Dotson to commit murder and Dotson agreed and participated in further planning with defendant, defendant was indeed, from defendant's perspective, "a leader in a multiple offender situation[.]"  *Id*.  "Solicitation to commit murder is a specific intent crime that requires proof that the defendant intended that a murder would in fact be committed."  *People v Crawford*, 232 Mich App 608, 616; 591 NW2d 669 (1998).  "A contingency in the plan may affect whether the victim will be murdered, but does not change the

---

[1] In stating that "Dotson had nothing to do with the initial solicitation," the trial court was responding to defense counsel's argument that "Dotson would be considered as much or more or would be a leader as opposed to the defendant because of . . . him writing letters to the defendant . . . and just a whole bunch of things going on which do not show the defendant as being any leader."

solicitor's intent that the victim be murdered." *Id.* For this crime, the defendant's state of mind is paramount. Here, defendant intended that a murder occur and was leading Dotson as part of the offense of murder—from defendant's point of view, he was the "director" of the offense that Dotson had agreed to physically carry out, and the two later engaged in telephone conversations alluding to the murder plan.[2] See *People v Houthoofd*, unpublished per curiam opinion of the Court of Appeals, issued February 3, 2009 (Docket No. 269505), p 10, rev'd in part and remanded 487 Mich 568 (2010). Defendant demonstrated his willingness, intent, and ability to lead another in a criminal endeavor. Under the particular circumstances of this case, I conclude that the trial court properly assessed 10 points for OV 14.

I find it appropriate to distinguish the cases relied on by the majority[3] and would uphold the 10-point score for OV 14.

In addition, after undertaking a reasonableness review of defendant's sentence, I find no basis for vacating the sentence. As noted in *People v Steanhouse*, 500 Mich 453, 476-477; 902 NW2d 327 (2017), reasonableness review involves determining whether the sentencing court abused its discretion by violating the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990).

Admittedly, the sentencing departure was large. The guidelines range was 81 to 135 months, and the trial court sentenced defendant to a minimum terms of 360 months. However, "[r]ather than impermissibly measuring proportionality by reference to deviations from the guidelines, our principle of proportionality requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 474 (quotation marks and citation omitted). In addition, the trial court provided a great deal of reasons for the sentence, including the following: (1) defendant

---

[2] MCL 777.44(3) states that "[t]he entire criminal transaction should be considered when scoring [OV 14]." It is true that the crime of solicitation of murder does not *require* that the person being solicited accept the solicitation or engage in any further action with regard to it. *Crawford*, 232 Mich App at 616 ("[s]olicitation to commit murder occurs when . . . the solicitor purposely seeks to have someone killed and . . . tries to engage someone to do the killing," and "[s]olicitation is complete when the solicitation is made"). However, the case at hand *did* involve an acceptance (albeit a feigned one) of the solicitation by Dotson, as well as further discussions of the murder between defendant and Dotson. As such, from defendant's point of view, defendant was the "leader in a multiple offender situation" under MCL 777.44(1)(a). I need not address whether defendant would have properly been deemed as such if Dotson had declined the solicitation.

[3] I acknowledge that MCR 7.215(J)(1) states: "A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule." I do not consider the cases cited by the majority as establishing a "rule of law" with regard to the scoring of OV 14 for solicitation of murder under the factual circumstances present in this case.

exhibited an escalating pattern of retaliation and violence toward certain specific individuals and had gone so far as to solicit murder to avoid prosecution in a false-pretenses case; (2) defendant or someone at his behest had repeatedly threatened the wellbeing of a police officer involved in the false-pretenses case; (3) OV 19 was insufficient to account for the "extreme length [i.e., solicitation of murder] the defendant went to in his quest to subvert and avoid justice;" (4) the guidelines in effect at the time of the offense did not allow the court, in scoring the guidelines, to take into account defendant's premeditated intent to kill but had since been amended to allow this action;[4] and (5) the prior record variables did not adequately account for the evidence that "defendant has been targeting and victimizing people that he perceived to have wronged him in some way since at least 1994." On this last point, the court articulated that defendant had shot at a person who was responsible for placing him on a work suspension and had assaulted a man who had terminated him from employment. The court concluded that "[t]he guidelines, as scored, are woefully inadequate to punish the defendant for the severity of his conduct in this case, provide for his rehabilitation, and to protect [people who] have been victimized by defendant's increasingly brazen and frightening actions. The seriousness of the offense cannot be overstated. Defendant tried to have another man killed in order to avoid prosecution for obtaining a tractor by false pretenses." The court added that "the record evidence indicates that this was not the defendant's first attempt to get rid of another person who dared to hold him accountable for his own misdeeds," and the court noted that defendant had expressed no remorse and thus exhibited no evidence of rehabilitation. The court finished its sentencing ruling by stating that "the extent of the departure from the guidelines as scored is necessary to protect those that have already been victimized by defendant from further acts of retribution."

The trial court recognized that defendant was an exceedingly dangerous person who posed a threat to the physical safety of others and who had failed to show that he had been rehabilitated such that the threat had been lessened. Under these particularly egregious circumstances and given the careful elucidation and reasoning by the trial court, I cannot find that the court abused its discretion in sentencing defendant. While solicitation of murder is, of course, *always* a very serious crime, defendant exhibited particularly aggravated behavior and targeted multiple individuals.[5]

I would affirm the sentence.

/s/ Patrick M. Meter

---

[4] The trial court was referring to OV 6, MCL 777.36, which, as of April 22, 2002, can be scored for solicitation of murder. See 2002 PA 143.

[5] I agree with the majority that the court properly scored OV 19 and that numerous issues raised by defendant have already been ruled on by this Court. Defendant's appellate arguments provide no basis for vacating defendant's sentence.