*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MAX HENRY OOM,

Defendant-Appellant.

UNPUBLISHED
September 17, 2020

No. 346557
Emmet Circuit Court
LC Nos. 17-004525-FH;
17-004621-FH

Before: REDFORD, P.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Max Henry Oom, pleaded guilty to attempted third-degree criminal sexual conduct (CSC-III), MCL 750.92; MCL 750.520d(1)(a) (victim at least 13 years of age and under 16 years of age), and delivery of 3,4-Methylenedioxy Methamphetamine (MDMA, commonly known as "ecstasy"), MCL 333.7401(1) and (2)(b)(*i*). The trial court sentenced defendant to serve consecutive terms of 16 months to 5 years in prison for the attempted CSC-III conviction and 6 to 20 years in prison for the delivery of MDMA conviction. Defendant appeals as on leave granted,[1] challenging only his sentence for delivery of MDMA. Specifically, defendant contends that the trial court erred by assessing 10 points for offense variable 14 (offender's role). For the reasons set forth below, we conclude that OV 14 was incorrectly scored at 10 points. We vacate defendant's sentence and remand the matter to the trial court for resentencing under correctly scored guidelines.

## I. FACTUAL HISTORY

On October 30, 2017, an undercover police officer arranged two controlled drug buys using a confidential informant (CI) and prerecorded funds. The first involved the CI approaching Austin Jones in order to purchase MDMA. Jones entered the CI's vehicle and directed him to drive to an address in Levering, Michigan, where Jones could pick up MDMA from his source, which turned out to be defendant. The CI handed the prerecorded funds over to Jones. At the address, Jones

---

[1] *People v Oom*, 504 Mich 964 (2019).

exchanged the money for MDMA and subsequently delivered the drug to the CI. The second controlled buy involved the CI purchasing MDMA directly from defendant. The CI went to the address from the first buy and completed another sale of MDMA with defendant. After presenting the MDMA to the undercover officer, the CI told the officer that he had bought controlled substances from defendant " 'too many times to count.' "

A search warrant for the address was drafted and executed in the early morning hours of October 31, 2017. A large house party was taking place when the police officers arrived. Various types of drugs and drug paraphernalia were recovered. While conducting interviews, police officers encountered defendant and searched him. The majority of the prerecorded money used in the controlled buys was found on his person. Defendant was detained and taken to the Emmet County Jail. At the jail, defendant asked to speak with the officer who had arranged the buys. He told the officer that he had sold MDMA to Jones as well as two other individuals, whose names he provided. Defendant stated that he had obtained the MDMA from "a larger source" and then resold the MDMA at a higher price.

Defendant pleaded guilty on December 7, 2017, to one count of delivery of MDMA, and the trial court sentenced him on January 23, 2018. Defendant filed a timely motion to correct an invalid sentence, challenging the scoring of Offense Variable (OV) 14. Following a hearing, the trial court denied this challenge.

II. SENTENCING

Defendant argues that he is entitled to resentencing because the trial court incorrectly scored OV 14, resulting in an incorrect minimum guidelines range under the sentencing guidelines. We agree.

We review the trial court's factual determinations used for sentencing under the sentencing guidelines for clear error, and these factual determinations must be supported by a preponderance of the evidence. *People v Armstrong*, 305 Mich App 230, 242, 245; 851 NW2d 856 (2014). We only find the trial court's factual findings clearly erroneous if, after having reviewed the entire record, we are definitely and firmly convinced that the trial court made a mistake. *Id*. at 242. We review de novo questions of law, such as the proper interpretation and application of the sentencing guidelines. *Id*. at 243. When calculating a score under the sentencing guidelines, a trial court may consider all record evidence before it. *Id*. at 245.

Offense variable 14 is scored in accordance with MCL 777.44, which provides:

(1) Offense variable 14 is the offender's role. Score offense variable 14 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) The offender was a leader in a multiple offender situation……..10 points

(b) The offender was not a leader in a multiple offender situation…0 points

(2) All of the following apply to scoring offense variable 14:

(a) The entire criminal transaction should be considered when scoring this variable.

(b) If 3 or more offenders were involved, more than 1 offender may be determined to have been a leader.

A multiple offender situation refers to " 'a situation consisting of more than one person violating the law while part of a group.' " *People v Dickinson*, 321 Mich App 1, 22; 909 NW2d 24 (2017), quoting *People v Jones*, 299 Mich App 287, 289; 829 NW2d 350 (2013), vacated in part on other grounds 494 Mich 880 (2013). While the Legislature did not define "leader," this Court has construed the term for purposes of OV 14 as "a person or thing that leads" or "a guiding or directing head, as of an army or political group." *People v Rhodes (On Remand)*, 305 Mich App 85, 90; 849 NW2d 417 (2014), quoting *Random House Webster's College Dictionary* (2001). Factors significant in determining whether a defendant acted as a "leader" in a criminal undertaking include whether the defendant "acted first, gave any directions or orders to [a co-offender], displayed any greater amount of initiative beyond employing a more dangerous instrumentality of harm, played a precipitating role in [a co-offender's] participation in the criminal transaction, or was otherwise a primary causal or coordinating agent." See *Rhodes*, 305 Mich App at 90; see also *Dickinson*, 321 Mich App at 23 (noting that the defendant's independent leadership in procuring heroin, transporting it to and then smuggling it into a prison to her co-participant established the defendant's status as a leader).

Defendant contends on appeal, as he did in his motion to correct an invalid sentence, that there is no record evidence that he and Jones were working together to coordinate the delivery of MDMA to the confidential informant. In other words, while acknowledging that this case involves "multiple offenders," i.e., himself and Jones, defendant argues that there is no evidence that he and Jones were "violating the law while *part of a group*." *Dickinson*, 321 Mich App at 22 (emphasis added). We agree.

The *Jones* case provides an example of a "multiple offender situation" for purposes of OV 14. In *Jones*, the defendant objected to a score of 10 points for OV 14, arguing that, because he was the only person who committed and was charged with the underlying assaults, he had not acted as part of a group. *Jones*, 299 Mich App at 286. This Court disagreed, noting that the defendant and another young man, Taiwan, went together to the mall to confront a group of rivals, that the two groups had a bad history with one another, that their confrontation began with trash-talking, and then escalated when the defendant and Taiwan drew guns and the defendant started firing. *Id*. at 287-288. The Court concluded that, even though the defendant was the only person to fire a gun, he did so as part of a group for purposes of OV 14.[2]

In the present case, the trial court concluded that both defendant and Jones were involved in selling MDMA to the CI, and characterized Jones as a "conduit" in the transaction. This characterization implies that defendant and Jones were consciously working together as "source"

---

[2] The court did not consider whether the defendant acted as a leader because the issue was not raised. *Jones*, 299 Mich App at 288 n 1.

and distributor, respectively. However, nothing in the presentence investigation report (PSIR), the plea hearing, the sentencing hearing, or the hearing on defendant's motion for resentencing fleshes out defendant's relationship with Jones or even indicates that there was any relationship beyond that of individual MDMA seller and individual MDMA buyer. The drug bust was set up for the CI to purchase MDMA from Jones, after Jones purchased it from someone else, who happened to be defendant. The record does not allow us to conclude that Jones's status as a "conduit" was anything more than a function of how the bust was set up and the fact that Jones knew he could obtain MDMA from defendant. Defendant's admission to selling MDMA to other people at the house party that night, and the CI's account of returning later to the house party and buying MDMA directly from defendant and his acknowledgment to an officer that he had previously purchased controlled substances from defendant "too many times to count" depicts defendant as an individual seller open to doing business with all comers. Defendant may well have been coordinating with Jones to distribute his product; however, such a conclusion would be mere speculation, given the record before us.

The sentencing court is permitted to draw inferences regarding a defendant's behavior from objective evidence. *Dickinson*, 321 Mich App at 23. Nevertheless, the factual determinations a court uses for sentencing must be supported by a preponderance of the evidence. *Armstrong*, 305 Mich App at 242. The determination that defendant was part of "a situation consisting of more than one person violating the law while part of a group," *Dickinson*, 321 Mich App at 22 (quotation marks and citation omitted) is not so supported.[3] Accordingly, the trial court erred by assessing 10 points for OV 14.

Violation of MCL 333.7401(2)(b)(*i*) is a Class B Felony, and defendant's total OV score was 35. Subtracting 10 points would result in a total OV score of 25, thus reducing defendant's OV level from IV to III, and his minimum guidelines range from 72 to 120 months to 57 to 95 months. MCL 777.63. Because the trial court's error affected the statutory sentencing guidelines range, we remand to the trial court for resentencing. *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006) (requiring resentencing when a sentence "is based upon an inaccurate calculation of the guidelines range").

Vacated, and remanded for resentencing. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Michael J. Kelly

---

[3] Because we conclude that the preponderance of the evidence does not support a finding that defendant was violating the law as part of a group for purposes of OV 14, we need not address whether he acted as a leader.

-4-